IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,        :        CRIMINAL ACTION
                                 :        NO. 06-367
        v.                       :
                                 :
GREGORY JONES                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          DECEMBER 21, 2011


TABLE OF CONTENTS

I.    BACKGROUND............................................... 2
II.   DISCUSSION............................................... 11
      A.    Standard of Review................................ 12
      B.    Ground One........................................ 14
      C.    Ground Two........................................ 16
      D.    Ground Three...................................... 21
            1.    Withdrawal of Guilty Plea................... 22
            2.    Presentence Investigation Report............ 24
            3.    Perjury at Sentencing....................... 25
            4.    Filing Appeal............................... 31
      E.    Ground Four....................................... 33
      F.    Ground Five....................................... 34
III.  CERTIFICATE OF APPEALABILITY............................. 35
IV.   CONCLUSION............................................... 36

Gregory Jones ("Petitioner") is a federal prisoner incarcerated at FCI-Elkton. Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion").[1] Petitioner claims that he received constitutionally ineffective assistance of counsel.

For the reasons set forth below, the Court will deny with prejudice the § 2255 motion.

## I.   BACKGROUND

Petitioner pled guilty to all counts of a nine-count superseding indictment charging him with conspiracy to possess access-device-making equipment, document-making implements, and counterfeit access devices (Count I), producing counterfeit access devices (Count II), possessing unauthorized and counterfeit access devices (Counts III and IV), possessing device-making equipment (Counts V and VI), possessing document-making equipment (Counts VII and VIII), and aggravated identity theft (Count IX), in violation of 18 U.S.C. §§ 371, 1029(a)(1)

---

[1]     The following motions relating to the § 2255 Motion are pending in this case: Motion to Strike the Government's Surreply (ECF No. 155); Motion for Evidentiary Hearing (ECF No. 159); and Motion for Appointment of Counsel (ECF No. 164). Furthermore, the following motions unrelated to the § 2255 Motion are pending: Petitioner's Motion to Dismiss the Government's Motion to Clarify the Court's Restitution Order (ECF No. 158) and Petitioner's Motion for Allowance of Nunc Pro Tunc Appeal (ECF No. 162).

and (3)-(5), 1028A, and 2. See Superseding Indictment, ECF No. 40.

The charges stemmed from the following facts:[2]

> The facts in this case are largely undisputed. At all relevant times, Jones and another individual named Brian "Judge" Morgan ("Morgan") were friends and business acquaintances. In 2002, the two men met with a third man, Dan Mitchell, who instructed them on the "theory" and necessary materials for making counterfeit credit cards.

> In 2002, the three men began operating a counterfeiting plant out of an apartment located at 39th and Girard Streets in Philadelphia, Pennsylvania. The plant remained in operation until the equipment was stolen at some point in 2003. Sometime later in 2003, Morgan and Jones leased an apartment at 57th and Rodman Streets, also in Philadelphia, Pennsylvania. From that location, and from 2003 to 2006, the defendant and Morgan engaged in the theft, production, counterfeiting and distribution of credit cards and credit card numbers.

> Morgan contributed most of the money with which he and Jones purchased the equipment necessary for the production of the counterfeit credit cards. Jones, on the other hand, was responsible for "loading the software [and] obtaining information as far as the logos of different things that was [sic] needed to make the documents look authentic." They shared equally in the cost of maintaining the machinery and getting new materials, and jointly set $100 as the minimum price for counterfeit credit cards. They also jointly ordered skimmers from the internet. Morgan testified that the two were involved in a fifty-fifty partnership except that they each had their own client lists and sources of credit card numbers.

---

[2]     The Court made these findings of fact after holding two evidentiary hearings regarding Petitioner's objections to the presentence investigation report in this case.

At some point between 2003 and 2005, Jones and Morgan purchased new equipment and moved their illicit enterprise from the Rodman Street location to 1913 Alden Street in Philadelphia, Pennsylvania. On February 7, 2007,[3] a search warrant was executed on the Alden Street address and Morgan was arrested. Among those items confiscated from the Alden Street address were thousands of credit card numbers, multiple computers, scanners, an embosser, credit card receipts from numerous businesses, images of credit card holograms, tipping foil, and hundreds of completed counterfeit credit cards and drivers licenses. In total, there were 6,631 distinct, i.e. non-duplicative, credit card numbers found at 1913 Alden Street. Mr. Jones admitted that he had been continuously involved in the manufacturing of counterfeit credit cards from the date he and Mr. Morgan purchased the property.

Following Morgan's arrest, and apparently undeterred, Jones continued the illicit business at an apartment located at 4158 Girard Avenue, in Philadelphia, Pennsylvania. In May of 2006, the Secret Service executed a search warrant at that location and Jones was arrested. [One hundred forty-two] credit card numbers were found at the Girard Avenue address.

The 6,631 credit card numbers found at the Alden Street address, combined with the 142 found at the Girard Ave address, yield a total of 6,773 credit card numbers. Of these, the government seeks to hold Jones liable for approximately 6,700 distinct credit card numbers. [Two thousand seven hundred forty-eight] of the 6,700 numbers were found on credit card receipts, skimmers and the business records of the Comcast Corporation.

---

[3]        Due to a typographical error, the findings of fact should reflect that the search warrant was executed on February 7, 2006.

United States v. Jones, 557 F. Supp. 2d 630, 635-37 (E.D. Pa. 2008) (internal citations to the record and footnotes removed), aff'd, 332 F. App'x 801 (3d Cir. 2009).

Shortly after his arrest, Petitioner was released on bail. See Order, June 1, 2006, ECF No. 7. And on July 20, 2006, a grand jury returned a five-count indictment charging Petitioner with various violations of possession of counterfeit devices and counterfeit-device-making equipment. See Indictment, ECF No. 11.

On September 6, 2006, Petitioner entered into a proffer agreement with the Government. Gov't Resp. 2, ECF No. 146. However, on October 30, 2006, after three interviews with Petitioner, the Government informed him that it would no longer pursue a cooperation plea agreement because he had not been forthcoming in his interviews. Id. at 2-3.

At this point, the Government had additional evidence regarding Petitioner's counterfeiting enterprise with Morgan and offered not to seek a superseding indictment if Petitioner pled guilty to the charges in the then-pending Indictment by November 13, 2006. Id. at 3; Letter from Assistant U.S. Attorney Sarah L. Grieb to Robreno, J. (Oct. 18, 2006), Gov't Resp. Ex., vol. I, at 1 (notifying Court that Government will seek superseding indictment if case goes to trial); Letter from Assistant U.S. Attorney Sarah L. Grieb to Thomas F. Burke, Esq. (Nov. 8, 2006),

5

Gov't Resp. Ex., vol. I, at 2 (notifying counsel that deadline
to plead guilty is November 13, 2006). If Petitioner pled
guilty, the Government offered to use the additional evidence at
sentencing to prove relevant conduct.

On November 17, 2006, Counselor Burke, Petitioner's
initial counsel, advised the Government that Petitioner planned
to plead guilty to the charges in the then-pending Indictment
and the Court, accordingly, scheduled a change-of-plea hearing.
See Notice, Nov. 17, 2006, ECF No. 31. But before the plea
hearing, Counselor Burke moved to withdraw as counsel. Mot. to
Withdraw, ECF No. 33. After a hearing, the Court considered and
denied the motion to withdraw, allowed Petitioner to hire new
counsel, and set a trial date of January 11, 2007. Order, Dec.
8, 2006, ECF No. 37.

On December 14, 2006, Petitioner had not yet pled
guilty and, as a result, the Government sought a superseding
indictment, which charged Petitioner as described above.
Superseding Indictment 1.

Petitioner continued with the counterfeit enterprise.
On December 20, 2006, Petitioner sold a counterfeit driver's
license to a cooperating witness who was consensually recorded.
Gov't Resp. 4. On December 21, 2006, a search warrant was
executed at Petitioner's residence on South 58th Street in

Philadelphia, Pennsylvania, and Petitioner was arrested. Id.
Agents found more evidence of the counterfeit enterprise. Id.

On December 26, 2006, Gregory Noonan, Esquire, entered
his appearance on behalf of Petitioner. Notice, Dec. 26, 2006,
ECF No. 48. Following a hearing, the Court granted Counselor
Burke's motion to withdraw and continued the trial until April
5, 2007. See Order, Jan. 8, 2007, ECF No. 56; Second Scheduling
Order, ECF No. 57.

The Government advised Counselor Noonan that
Petitioner could plead guilty to the charges in the Superseding
Indictment with the understanding that the Government would
introduce the evidence obtained from Petitioner's December 2006
criminal activity as relevant conduct at sentencing. Change-of-
Plea Hr'g Tr. 5, Mar. 15, 2007; Gov't Resp. 5. If Petitioner did
not plead guilty by a set deadline, the Government would seek a
second superseding indictment. On this occasion, Petitioner took
the offer.

On March 15, 2007, Petitioner pled guilty to all nine
counts charged in the Superseding Indictment and the Court
ordered a presentence investigation report ("PSI"). The Court
scheduled sentencing for June 18, 2007. Notice, Nov. 15, 2007,
ECF No. 66.

On May 11, 2007, the Government moved to limit the
number of victims to whom it would be required to provide notice

7

because the total number of victims in the case was estimated to be over 10,000 entities and individuals. Mot. to Limit Number of Victims Requiring Notice Under 18 U.S.C. § 3771, ECF No. 72. The Court granted the motion without objection. Order, May 18, 2007, ECF No. 74.

On May 18, 2007, despite having counsel of record, Petitioner filed a pro se motion to withdraw his guilty plea. Mot. for Change of Pleading, ECF No. 73. On June 18, 2007, during the sentencing hearing, Counselor Noonan orally moved the Court for withdrawal. Sentencing Hr'g Tr. 2-4, June 18, 2007. The Court granted the motion, appointed Jerry S. Goldman, Esquire, to represent Petitioner, and reset the sentencing date for November 29, 2007. Order, June 18, 2007, ECF No. 79; Appointment, June 21, 2007, ECF No. 81.

Counselor Goldman filed various objections to the PSI. At the sentencing hearing, Counselor Goldman presented limited argument on the pro se motion to withdraw Petitioner's guilty plea. Sentencing Hr'g Tr. 6, 8-11, Nov. 29, 2007. The Court, nevertheless, denied the motion. And following two days of evidentiary hearings, the Court sustained in part and overruled

8

in part Petitioner's objections.[4] Mem. Op. & Order, May 29, 2008, ECF No. 134.

On May 30, 2008, the Court sentenced Petitioner to 144 months of imprisonment, 3 years of supervised release, a $900 assessment, and $311,575.35 in restitution.[5] Judgment, June 2, 2008, ECF No. 136.

On June 17, 2008, District Judge William H. Yohn, Jr., Eastern District of Pennsylvania, sentenced Petitioner's co-conspirator, Morgan, and filed the transcript under seal. United States v. Morgan, No. 06-164 (E.D. Pa. June 17, 2008) (order entering judgment). Judge Yohn denied Petitioner's requests for the transcript to pursue a potential sentencing disparity under the § 3553 factors. See Letters from William H. Yohn, Jr., J. (July 18, 2008 & Aug. 4, 2008), Gov't Resp. Ex., vol. II, at 503-04.

On appeal, the Third Circuit affirmed this Court's judgment and sentence. United States v. Jones, 332 F. App'x 801

---

[4]     Specifically, the Court sustained Petitioner's objections "insofar as he [would] only be held liable for 2748 access devices," and overruled the remainder. Mem. Op. 31, May 29, 2008, ECF No. 134.

[5]     The Court ordered restitution to be paid as follows: $288,687.06 to American Express Global Security, $6,609.43 to Discover Financial Services, LLC, and $16,278.86 to GE Money Bank. Judgment 6. The Court further ordered that Brian Morgan (No. 06-164) is jointly and severally liable for the total amount of restitution. Id. at 7.

(3d Cir. 2009). Regarding Petitioner's argument that Judge Yohn erred in denying his request for the sealed transcripts, the Third Circuit noted that, because Morgan was sentenced after Petitioner, "it is not clear how the District Court . . . could have considered the issue of sentencing disparity vis a vis Morgan." Id. at 809. Nevertheless, the Court denied Petitioner's appeal of Judge Yohn's decision because Petitioner did not directly appeal from Judge Yohn's order. Id.

And on March 22, 2010, the U.S. Supreme Court denied Petitioner's petition for a writ of certiorari. Jones v. United States, 130 S. Ct. 1916 (2010).

On March 22, 2011, Petitioner filed his § 2255 Motion, which raises five claims of ineffective assistance of counsel with regard to Counselors Noonan and Goldman. Petitioner claims he was denied effective assistance because: (1) Counselor Noonan failed to object to the Superseding Indictment; (2) Counselor Noonan misled Petitioner regarding his plea options and coerced him to plead guilty; (3) Counselor Goldman failed to assist Petitioner in his pro se motion to withdraw his guilty plea, to investigate misstatements in the PSI, and to properly appeal Judge Yohn's denial of Petitioner's request for his co-conspirator's sentencing transcripts; (4) Counselor Goldman failed to challenge the U.S. Sentencing Guidelines calculations; and (5) Counselor Goldman failed to investigate whether the

10

Government made promises to Morgan not to prosecute his family members and not require Morgan to testify against family members. Mem. in Supp. 9-39.

The Government responded. Gov't Resp., ECF No. 146. Petitioner filed a Traverse to the Government's Response. Pet'r's Traverse, ECF No. 152. And the Government replied. Gov't Reply, ECF No. 153. Petitioner also filed a Supplemental Report. Supp. Report, ECF No. 154. The Court has considered all of the above filings, and the matter is now ripe for disposition.


## II.  DISCUSSION

A federal prisoner challenging his sentence based on a violation of the U.S. Constitution or laws of the United States may move the court that imposed the sentence to vacate, set aside, or correct the sentence. See 28 U.S.C. § 2255. In a § 2255 motion, a federal prisoner may attack his sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. See id. § 2255(b).

The five grounds for relief raised by Petitioner here all assert infringement of Petitioner's constitutional right to

effective assistance of counsel. Upon review of each claim, it plainly appears that Petitioner is not entitled to relief. Therefore, the Court will deny the § 2255 Motion without a hearing.

      A.    <u>Standard of Review</u>

      A petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that he is not entitled to relief.[6] The Court must dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. Governing § 2255 Proceedings for the U.S. District Courts 4(b) [hereinafter "Section 2255 Rule"]. A prisoner's pro se pleading is construed liberally. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>Huertas v. Galaxy Asset Mgmt.</u>, 641 F.3d 28, 32 (3d Cir. 2011). And a federal prisoner's grounds for relief are not

───────────────

[6] Section 2255 provides,

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).

subject to the exhaustion requirement applicable to federal habeas petitions.[7] See 28 U.S.C. § 2254(b)(1)(A).

The Sixth Amendment right to counsel is the right to effective assistance of counsel. E.g., Strickland v. Washington, 466 U.S. 668, 686 (1984). To warrant reversal of a conviction, a convicted defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008). The principles governing ineffective assistance claims under the Sixth Amendment apply in collateral proceedings attacking a prisoner's sentence. See Strickland, 466 U.S. at 697-98.

To prove deficient performance, a convicted defendant must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The Court will consider whether counsel's performance was reasonable under all the circumstances. Id. Furthermore, the Court's "scrutiny of counsel's performance must be highly deferential." See id. at 689. That is, there is a "strong presumption that counsel's

---

[7]     Of course, a § 2255 motion is not an application for writ of habeas corpus, see United States v. Hayman, 342 U.S. 205, 220 (1952), but, in fact, "replaced traditional habeas corpus for federal prisoners (at least in the first instance)," Boumediene v. Bush, 553 U.S. 723, 774-75 (2008); see also 28 U.S.C § 2255(e).

conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the Petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." See id. at 690. Next, the Court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." See id. at 690.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With these standards in mind, the Court will now consider each claim Petitioner raises.


    B.    Ground One

Petitioner claims Counselor Noonan provided ineffective assistance of counsel because he failed to object to the charges made in the Superseding Indictment. Mem. in Supp. 10. Specifically, Petitioner claims that the Government made contradictory statements because it allegedly represented in the

14

record that there was no plea agreement and later represented
that the Government would not supersede if the Defendant pled
guilty by a certain date. Id. Petitioner claims that the
Government breached its "agreement," to which his counsel should
have objected. Mem. in Supp. 10-11. Petitioner's argument,
however, lacks support in the record.

　　　　While it is true that the Government offered not to
seek a superseding indictment if Petitioner pled guilty to the
charges in the then-pending Indictment, the Government in no way
breached any agreement by successfully seeking the Superseding
Indictment. First, the Government and Petitioner did not have an
"agreement." Plea agreements are construed in terms of contract
law. See Puckett v. United States, 129 S. Ct. 1423, 1430 (2009);
United States v. Larkin, 629 F.3d 177, 186 (3d Cir. 2010).
Petitioner did not timely accept the Government's offer. That
is, Petitioner did not plead guilty by November 13, 2006. By
that date, Petitioner had not yet pled guilty. An agreement was
never formed, and it cannot be said that the Government breached
any agreement by seeking a superseding indictment on December
14, 2006. Cf. Restatement (Second) of Contracts § 35(2) ("A
contract cannot be created by acceptance of an offer after the
power of acceptance has been terminated . . . .").

　　　　And the Government did not make contradictory
statements regarding the alleged agreement. Indeed, at the

15

change-of-plea hearing, the Government's counsel informed the Court that there is no plea agreement, but only a condition that "if [Petitioner] pleads to the superseding indictment, [the Government] would not proceed with the second superseding indictment." Change-of-Plea Hr'g Tr. 5, Mar. 15, 2007. The Government acknowledged that Petitioner was entering into an "open plea" to the Superseding Indictment. Id. Petitioner testified that he understood that no "plea agreement" existed and that he understood the terms of the conditional oral agreement he had with the Government regarding the filing of a second superseding indictment. Id. at 6.

Furthermore, because the Government's offer did not become a binding agreement, the Government did not make any contradictory statement in representing to the Court that there was no plea agreement. Counselor Noonan was well within the range of professionally competent assistance in not objecting to the charges raised in the Superseding Indictment on this ground.[8]

C.   Ground Two

Petitioner claims Counselor Noonan provided ineffective assistance because he misled Petitioner regarding

---

[8]      Because Counselor Noonan's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

16

his plea options and coerced him to plead guilty. Mem. in Supp. 13. A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). When a defendant enters a plea of guilty upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks removed). If counsel's advice falls outside of this range, a convicted defendant then must prove prejudice. See id. at 58 (holding that two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel).

Petitioner claims that his decision to plead guilty was not a voluntary and intelligent choice because Counselor Noonan failed to move for dismissal of the charges raised in the Superseding Indictment. Mem in Supp. 13. Petitioner claims Counselor Noonan rendered ineffective assistance of counsel because the Government breached an alleged pretrial agreement and because the Government engaged in selective prosecution. Id. at 14. As was shown above, Counselor Noonan did not provide ineffective assistance by failing to move for dismissal of the charges raised in the Superseding Indictment based on the Government's alleged breach because no such binding "pretrial

17

agreement" was formed. The Court now considers whether Counselor Noonan provided ineffective assistance with regard to Petitioner's selective prosecution argument.

Because prosecutorial decisions are within the broad discretion of the Executive Branch, the Court exercises judicial deference when those decisions are under review. See, e.g., United States v. Armstrong, 517 U.S. 456, 464-65 (1996). A "presumption of regularity" generally supports decisions whether to prosecute. Id. at 464. However, the equal protection component of the Due Process Clause of the Fifth Amendment provides at least one restraint——"the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. To overcome the presumption of regularity, therefore, a convicted defendant must present "clear evidence to the contrary." Id. Because Petitioner has not presented clear evidence that the decision to prosecute him was based on race, his claim that Counselor Noonan rendered ineffective assistance must fail.

Petitioner claims that at the time agents executed a search warrant of Petitioner's Girard Avenue apartment, agents identified a white, male individual named Daniel Francisco, who was found in possession of crack cocaine, a counterfeit driver's license, a counterfeit credit card, and a receipt for fraudulent purchases at a Lowe's store. Mem. in Supp. 17. Petitioner

18

alleges Francisco had an outstanding arrest warrant for a
violation of state law. Id. Despite these facts, Petitioner
alleges, Francisco was allowed "to go free," while Petitioner, a
black male, was arrested, charged, and prosecuted. Id.

Petitioner's allegations are not consistent with the
facts of record. In fact, the counterfeit driver's license and
the counterfeit credit card, among other evidence, were "found
on the corner of the desk" in the Girard Avenue apartment. See
Certified Inventory of Evidence, Serial Number 109 2006 CE
000285 (May 25, 2006), Gov't Resp. Ex., vol. II, at 305. And the
receipt for fraudulent purchases from Lowe's was taken from
Petitioner when he was arrested. See Certified Inventory of
Evidence, Serial Number 109 2006 CE 000283 (May 25, 2006), Gov't
Resp. Ex., vol. II, at 303. At a sentencing hearing, U.S. Secret
Service Special Agent Joshua McDowell testified that he observed
a white male, presumably Francisco, outside of the apartment,
whose photo also appeared on the counterfeit driver's license
found in the apartment. Sentencing Hr'g Tr. 127-28, Nov. 29,
2007. To the agent's knowledge, Francisco had some crack cocaine
on his person but was not prosecuted. Id.

The decision not to prosecute Francisco for alleged
possession of crack cocaine is not clear evidence that the
decision to prosecute Petitioner was based on race. Indeed,
agents arrested Petitioner after executing a warrant of

Petitioner's apartment based on probable cause that Petitioner was making counterfeit driver's licenses and credit cards, Petitioner was "caught in the act" of making these devices during execution of the warrant, and Petitioner possessed equipment for making the devices and the counterfeit devices themselves. Therefore, Counselor Noonan's decision not to move for dismissal of the Superseding Indictment based on an argument of selective prosecution was well within the range of professionally competent assistance.[9]

---

[9]     Because Counselor Noonan's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

     Furthermore, Petitioner's brief and unsubstantiated allegations that Counselor Noonan "pressured" Petitioner into pleading guilty are without merit. See Mem. in Supp. 15.

     Petitioner claims Counselor Noonan failed to appear at a December 26, 2006, hearing. Id. However, Counselor Noonan did not enter his appearance in this case until December 29, 2006. See Notice of Att'y Appearance, Dec. 29, 2006, ECF No. 52.

     Petitioner claims Counselor Noonan failed to raise an issue of a missing $3,600 in Petitioner's "personal funds" that were confiscated at the time of his arrest. Mem. in Supp. 15. However, at sentencing, Counselor Goldman questioned Agent McDowell, who testified that the money was reported on a different form. See Sentencing Hr'g Tr. 132-34, Nov. 29, 2007.

     Petitioner claims Counselor Noonan was ineffective because he assured Petitioner that the controlling base offense level would not exceed sixteen under the U.S. Sentencing Guidelines. Mem. in Supp. 15. First, at the change-of-plea hearing, Petitioner acknowledged that a total maximum sentence of ninety-five years of imprisonment, plus a mandatory two-year sentence to run consecutive to any other sentence, could be

D.    Ground Three

Petitioner claims Counselor Goldman provided ineffective assistance because he failed to argue Petitioner's pro se motion to withdraw his guilty plea, he failed to investigate certain alleged false statements in the PSI, he failed to investigate alleged perjury at sentencing, and he failed to file a proper appeal. Mem. in Supp. 20. All of Petitioner's claims are without merit.

---

imposed and that the U.S. Sentencing Guidelines were advisory. Change-of-Plea Hr'g Tr. 26-28, Mar. 15, 2007. Furthermore, the Court informed Petitioner that it could not determine what the Guidelines recommend until the probation office prepares a presentence investigation report ("PSI"). Id. at 28. Second, allegedly erroneous advice regarding sentencing calculations are not grounds for an ineffective assistance claim when a convicted defendant was informed in open court of the potential maximum sentence and that the Guidelines are merely advisory and not binding on the Court. See, e.g., United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001). Any erroneous advice was, therefore, dispelled before Petitioner pled guilty. See id. Therefore, Petitioner fails to show Counselor Noonan rendered ineffective assistance by assuring Petitioner that the base offense level would not exceed sixteen.

Finally, Petitioner claims Counselor Noonan was ineffective because he advised Petitioner——to receive a reduction in his offense level under U.S. Sentencing Guideline § 3E1.1 for acceptance of responsibility——to plead guilty to all counts and not to contest the identity theft charge. Mem. in Supp. 15. First, the Government's offers not to file additional charges required that Petitioner plead guilty to all counts. Second, Petitioner fails to explain why Counselor Noonan's advice fell below the range of professionally competent assistance.

21

1.   <u>Withdrawal of Guilty Plea</u>

Counselor Goldman did not provide ineffective assistance of counsel by failing to argue Petitioner's pro se motion to withdraw his guilty plea. On May 21, 2007, Petitioner filed a pro se motion to withdraw his guilty plea, which the Court considered at Petitioner's sentencing. By the date of sentencing, Counselor Goldman entered his appearance on behalf of Petitioner. At sentencing, Counselor Goldman stated that he "[had] no additional argument other than set forth in the pro se papers." Sentencing Hr'g Tr. 6, Nov. 29, 2007. Counselor Goldman went on to state, "The pretrial motions [Petitioner] believed he could have raised dealt with search, dealt with selective prosecution and dealt with whether or not the government was permitted to supercede [sic] based upon an agreement and understanding relative to the proffers." <u>Id.</u> After the Government presented its argument, the Court denied Counselor Goldman's request that Petitioner make a pro se statement to the Court. <u>Id.</u> at 10. The Court denied the motion to withdraw. <u>Id.</u> at 11-12.

A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). A guilty plea is not

22

withdrawn at the defendant's whim. United States v. Brown, 250
F.3d 811, 815 (3d Cir. 2001). Defendant must provide a "fair and
just reason for withdrawing a plea of guilty." Id. When deciding
whether to grant a motion to withdraw, the Court considers the
following factors: "(1) whether the defendant asserts her
innocence; (2) whether the government would be prejudiced by the
withdrawal; and (3) the strength of the defendant's reason to
withdraw the plea." Id. Factor three is particularly relevant
here.

Petitioner argues that, had Counselor Goldman properly
argued for Petitioner's motion, the Court would have withdrawn
the guilty plea based on the Government's breach of the alleged
plea agreement and Counselor Noonan's alleged misrepresentation
of Petitioner's plea options and the U.S. Sentencing Guidelines
calculations. Mem. in Supp. 20. In the first place, because
there is no constitutional right to hybrid representation, the
Court was not obligated to consider Petitioner's pro se motion
filed while Petitioner was represented by counsel. See, e.g.,
United States v. D'Amario, 328 F. App'x 763, 764 (3d Cir. 2009).
Nevertheless, the Court provided Counselor Goldman an
opportunity to address the merits of the pro se motion. The
grounds on which the motion was based, as explained above, were
without merit. Counselor Goldman's refusal to buttress
Petitioner's motion to withdraw based on these meritless

23

grounds, therefore, was well within the range of professionally competent assistance.[10]

### 2.   Presentence Investigation Report

Petitioner claims that Counselor Goldman rendered ineffective assistance because he failed to investigate allegedly false statements in the PSI. Petitioner argues that Counselor Goldman failed to properly demand and review discovery and examine a U.S. Probation officer on the record regarding Petitioner's failure to report ownership of a property on Grays Avenue, Philadelphia, Pennsylvania, in a bankruptcy filing. Petitioner alleges he suffered an enhancement in his offense level for obstruction of justice. Petitioner's claim is without merit.

In fact, Counselor Goldman objected to the enhancement based on the bankruptcy filing. See Def.'s Sentencing Mem. 43-47, ECF No. 88. At sentencing, based on the evidence of record and Counselor Goldman's arguments, the Government advised the Court that it was not pursuing an obstruction enhancement based on the bankruptcy filing. See Sentencing Hr'g Tr. 55, Mar. 25, 2008. Ultimately, the Court assessed a two-point enhancement for

---

[10]     Because Counselor Goldman's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

obstruction of justice based on Petitioner's non-disclosure to the probation office of his ownership of a property on Grays Avenue alone. Mem. Op. 30, May 29, 2008, ECF No. 134.

Counselor Goldman was successful in dissuading the Government from pursuing an obstruction enhancement based on the disputed bankruptcy filing. The Court's Memorandum Opinion makes clear that the enhancement was based on Petitioner's failure to disclose ownership of the Grays Avenue property to the probation office, not based on the bankruptcy filing. Therefore, Counselor Goldman rendered professionally competent assistance.[11]

### 3.   Perjury at Sentencing

Petitioner claims Counselor Goldman rendered ineffective assistance by failing to object to three instances

---

[11]      Petitioner further alleges that Counselor Goldman was ineffective with regard to the probation officer's allegedly false statement that he interviewed Petitioner's mother. Mem. in Supp. 24. Ms. Ruby Jones, Petitioner's mother, declares that she was not interviewed by the probation office. Ruby Jones Aff. ¶¶ 1-2, App. to Mem. Br. First, the record does not reflect that the Court relied on this part of the PSI. Second, Petitioner raised this issue with the Court long before he was sentenced, which would have allowed his counsel enough opportunity to consider whether to object to this portion of the PSI. See Sentencing Hr'g Tr. 8, June 18, 2007. And Petitioner does not state how Counselor Goldman rendered ineffective assistance in this regard.

       Because Counselor Goldman's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

of alleged perjury by Agent McDowell, the agent who executed the search warrant of the Girard Avenue address. A convicted defendant may attack his sentence under § 2255 by alleging that a Government witness committed perjury. See United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992). "If a prosecutor uses testimony it knows or should know is perjury, it is fundamentally unfair to an accused." Id. An evidentiary hearing is required "[i]f the prosecutor had access to information that would indicate that a material witness is committing perjury, and . . . the perjured testimony creates a fundamental defect in the entire trial." Id. All of Petitioner's claims for alleged perjury are without merit.

First, Petitioner claims that Agent McDowell perjured himself at sentencing by testifying that American Express's actual losses were $286,687, when American Express's actual losses were, in fact, $86,783, with a net loss of $55,651. Mem. in Supp. 26-27. Petitioner seeks to attack the restitution ordered. However, the Court lacks authority to modify the restitution order pursuant to a § 2255 motion. See 28 U.S.C. § 2255(a) (providing that in certain instances a prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence"); Trader v. United States, 281 F. App'x 87, 88 (3d Cir. 2008) ("To the extent that [Petitioner] challenged the terms of his restitution order, the District

26

Court correctly concluded that he could not raise such a claim in a § 2255 motion."); Easton v. Williamson, 267 F. App'x 116, 118 (3d Cir. 2008) ("Ordinarily, challenges to a restitution order are not cognizable under § 2255."). Therefore, this claim is not cognizable.[12]

---

[12]     For the sake of completeness, and because Petitioner continues to contest the restitution ordered in this case, the Court will consider the merits of the issue Petitioner raises.

At sentencing, Agent McDowell testified that he made a list of the American Express credit card numbers discovered during the investigation of Petitioner and sent that list to American Express. Sentencing Hr'g Tr. 88-90, Nov. 29, 2007. American Express reported a total fraud loss of $288,687.06. See id. at 89-90; Gov't Ex. A-2, Gov't Resp. Ex., vol. I, at 214.

On May 5, 2006, American Express submitted a petition for remission to make a claim against $31,132.25 in U.S. currency that the U.S. Secret Service seized from Morgan. See Petition for Remission/Mitigation, App. to Mem. Br. That petition claimed a total fraud loss of $86,783.21. Attached to Petitioner's Traverse to the Government's Response, Petitioner submits a Memorandum Report from the Philadelphia Field Office of the U.S. Secret Service Criminal Investigative Division Asset Forfeiture Branch, relating to the investigation of Morgan, that "indicates that AMEX sustained a total loss of $86,783.21." Agent McDowell prepared the memorandum. Petitioner claims Agent McDowell committed perjury by testifying that American Express suffered a total fraud loss of $288,687.06, when he knew, based on the petition for remission referred to in the memorandum, that American Express only suffered a total loss of $86,783.21. Petitioner, however, misunderstands how restitution was calculated in this case.

American Express reduced its actual losses by "charging back" a portion of the fraudulent charges to merchants. As explained by American Express Security Support Agent Cynthia R. Walsh, American Express initially assumes the loss from a fraudulent transaction. Walsh Aff. ¶ 4, Mot. for Clarification, ECF No. 156. However, an agreement between

Second, Petitioner claims that Agent McDowell perjured himself regarding his testimony that he was unable to verify the actual losses related to certain credit card numbers seized. Petitioner states that Agent McDowell "falsely testified" that the credit card numbers he seized could not be verified because it would take too much time. In contrast, U.S. Secret Service Agent Fincher testified that agents verify credit card numbers by contacting the banks that issued the cards to verify the numbers. Mem. in Supp. 27. Petitioner, however, mischaracterizes the testimony.

---

American Express and the relevant merchants determines whether American Express or the merchant will ultimately assume the loss. Id. If American Express determines that the merchant is responsible for the loss, it will charge back the loss to the merchant. Id.

At this point, American Express suffered $88,809.90 of the total fraud loss because it was able to charge back $199,877.16 to 184 merchants. Id. ¶ 6. Nevertheless, the total restitution owing remains the same because the loss was shifted to the merchants who were charged back. Indeed, the Court recently clarified the restitution order to reflect these charge-backs. See Order, Oct. 5, 2011, ECF No. 157.

The total restitution amount, $311,575.35, remains the same. Id. That Agent McDowell did not testify to the fact that American Express recouped some of its losses is not material to the ultimate restitution order because the total fraud loss remains the same. Furthermore, it cannot be said that Agent McDowell's testimony created a fundamental defect in Petitioner's sentencing. That American Express recouped any of its losses does not change the total restitution amount owed by Petitioner.

Agent McDowell testified regarding over 6,700 account numbers that he collected from the investigation of Petitioner. Sentencing Hr'g Tr. 107-11, 148-49, Nov. 29, 2007. Upon contacting MasterCard and Visa, which issued a majority of the numbers, those companies provided Agent McDowell a list of issuing banks for each account. Id. at 108. Agent McDowell would have needed to issue approximately 5,000 subpoenas to those banks to retrieve loss amount information, which would have taken a significant amount of time. Id. at 108-09. Agent McDowell did not issue the subpoenas. Id. at 111.

Agent Fincher testified regarding two stolen rolls of credit card receipts from a gas station. Id. at 243-44. Agent Fincher contacted each bank and requested documentation to support their loss claims without issuing subpoenas. Id. at 244-54. Some banks responded. Id. Therefore, Agent Fincher verified accounts without issuing subpoenas. The testimony of Agents McDowell and Fincher did not conflict. Counselor Goldman's failure to object or further investigate Agent McDowell's testimony was well within the range of professionally competent assistance.[13]

---

[13]     Furthermore, upon review of the transcript, there is no indication that Counselor Goldman fell short of professionally competent assistance in raising this issue before the Court through his questioning of Agents McDowell and Fincher. In fact, Counselor Goldman successfully had Agent

Third, Petitioner argues Agent McDowell perjured himself because he falsely testified that only $16.00 was found on Petitioner during his arrest. Petitioner claims this testimony was to cover up a missing $3,600 that was seized during execution of the search warrant. Petitioner's claim is inconsistent with the record and without merit. First, Agent McDowell merely confirmed that an evidence receipt showed $16.00 in cash was seized in response to Counselor Goldman's questioning. Id. at 132. When Counselor Goldman questioned Agent McDowell about a photograph showing additional money seized, he testified that additional money would have been recorded on another document. Id. at 132-34. Indeed, a property receipt, which the Government provided to Petitioner, lists an additional $2,048 that was seized during the search of the Girard Avenue address. See Certified Inventory of Evidence, Serial Number 109 2006 CE 000276 (May 26, 2006), Gov't Resp. Ex., vol. I, at 7. Agent McDowell did not commit perjury.

Furthermore, Petitioner's claim in this regard is meritless because Counselor Goldman pursued this theory in

---

Fincher's testimony stricken as inadmissible hearsay. See Sentencing Hr'g Tr. 256, Nov. 29, 2007.

Because Counselor Goldman's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

questioning Agent McDowell——that is, to investigate whether the Government seized any cash that was not reported. There was and is no evidence of record that the Government failed to report any cash seized during the searches executed during the investigation of Petitioner. That Petitioner is dissatisfied with the result is not grounds to vacate his sentence. Therefore, Counselor Goldman acted well within the range of professionally competent assistance.[14]

### 4.   Filing Appeal

Petitioner claims Counselor Goldman rendered ineffective assistance because he failed to appeal Judge Yohn's order denying his request to unseal the sentencing transcript of co-conspirator Morgan.

Assuming Counselor Goldman's assistance was deficient for improperly appealing Judge Yohn's order, Petitioner did not experience prejudice. First, as the Third Circuit recognized in dicta, Judge Yohn sentenced Morgan after this Court sentenced Petitioner, making it unclear how the Court could have considered Morgan's setence. See United States v. Jones, 332 F. App'x 801, 809 (3d Cir. 2009).

---

[14]    Because Counselor Goldman's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

Second, the similarities and dissimilarities between Petitioner and Morgan were adequately presented to the Court at the sentencing hearing. Counselor Goldman argued Morgan's larger role in the counterfeiting enterprise, and the Government advised the Court that Morgan's guidelines were higher, that he received an additional firearm charge, that he entered into a cooperation plea agreement, that he cooperated under that agreement, and that the Government may potentially move for a downward departure. See Sentencing Hr'g Tr. 11, 23-26, May 30, 2008. Ultimately, the Court took into account that the two were in different positions. Id. at 35.

Third, Judge Yohn's order would probably have been upheld because a "defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006). Therefore, even assuming that Counselor Morgan's failure to properly appeal Judge Yohn's order could be considered incompetent assistance, Petitioner did not suffer prejudice.[15]

---

[15]     Petitioner's allegation that the Government engaged in forum shopping by instructing the Court to assign Petitioner's matter to Judge Robreno instead of Judge Yohn is meritless. Mot. in Supp. 30-31. First, this claim is not cognizable under § 2255 because Petitioner waived objection to constitutional infirmities that antedate his entry of a guilty plea. See Tolette v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal

E.    Ground Four

Petitioner claims Counselor Goldman rendered ineffective assistance because he "never argued or explored" certain arguments against Petitioner being held accountable for credit card account numbers that belonged to Morgan or that were potentially invalid. Mem. in Supp. 35. Petitioner attempts to relitigate this issue under the guise of a § 2255 motion. In any event, the claim is without merit.

Indeed, the Government argued that Petitioner was responsible for all the account numbers seized based on relevant conduct under U.S. Sentencing Guidelines § 1B1.3 and any fictitious account numbers. Counselor Goldman argued against the Government's position. See Letter from Goldman to Probation Officer Hassinger 2-3 (Sept. 19, 2007), Gov't Resp. Ex., vol. I, at 12 (objecting to PSI); Def.'s Sentencing Mem. 23-34; Sentencing Hr'g Tr. 17-31, Mar. 25, 2008. Despite Counselor Goldman's extensive arguments, the Court found that Petitioner

---

defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Furthermore, the claim lacks merit because Morgan and Petitioner were charged under separate indictments based on evidence obtained pursuant to the execution of separate search warrants.

33

was responsible for the account numbers found at the Alden
Street and Girard Avenue locations. Mem. Op. 18, June 2, 2008.
Counselor Goldman's efforts were well within the range of
professionally competent assistance.[16]

F.    Ground Five

Petitioner claims Counselor Goldman rendered
ineffective assistance because the Government failed to produce
in discovery promises made to Morgan not to prosecute Morgan's
family members or require that he testify against them, in
violation of Petitioner's Fifth Amendment Rights under Brady v.
Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405
U.S. 150 (1972). The Government admits that if such a promise
were made, then it would have been obligated to disclose it to
Petitioner. Gov't Rep. 42. However, as the evidence of record
demonstrates, the Government made no such promise.

During cross-examination of Morgan at Petitioner's
sentencing hearing, Morgan testified that no such agreement
existed. Sentencing Hr'g Tr. 216, Nov. 29, 2007. And the
Government avers that it never made any such promise to Morgan.
Gov't Resp. 42. Petitioner's bare allegation that, "after

_____

[16]    Because Counselor Goldman's performance was not
deficient, the Court does not reach whether Petitioner suffered
prejudice.

34

investigation, he became aware of the fact that the Government had an agreement with Morgan" is, therefore, contradicted by the evidence of record in this case. Furthermore, Petitioner has not shown how Counselor Goldman rendered ineffective assistance, especially considering that he cross-examined Morgan on this issue. Therefore, Counselor Goldman's efforts were within the range of professionally competent assistance.[17]

Having determined that all of Petitioner's claims that he was denied effective assistance of counsel are meritless, the Court will now consider whether to issue a certificate of appealability.

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2255 motion, the court must also decide whether to issue or deny a certificate of appealability ("COA"). See Section 2255 R. 11(a). The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The U.S. Supreme Court has prescribed the following standard for denials based on the merits: "The petitioner must demonstrate that reasonable jurists would find

---

[17]    Because Counselor Goldman's performance was not deficient, the Court does not reach whether Petitioner suffered prejudice.

the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, an evidentiary hearing is not required because it plainly appears that Petitioner is not entitled to relief on any of the grounds raised. For the same reasons, Petitioner is also not entitled to a COA because he has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a COA.

## IV.    CONCLUSION

For the reasons provided, the Court will deny with prejudice the § 2255 Motion and not issue a certificate of appealability. The Court will deny as moot all of Petitioner's remaining motions relating to the § 2255 Motion. Furthermore, the Court will deny as moot Petitioner's untimely motion to dismiss the Government's motion to clarify the Court's restitution order and will grant Petitioner's motion to file a notice of appeal nunc pro tunc. An appropriate order will follow.

36